Final case on our call this morning is Agenda No. 21, Case No. 105-096, Katherine R. Napleton v. Village of Hinsdale. Mr. Ramsdell, are you ready to proceed? Yes. All right, you may proceed. May it please the Court. Excuse me. Good morning, Your Honor. My name is Thomas Ramsdell. I represent the appellant, Katherine Napleton. This case presents the opportunity for the Illinois Supreme Court to clarify that when a municipality acts to take away private property rights upon which that property owner has a right to rely, that that municipality's actions will be subject to heightened judicial scrutiny, what we call, or what Justice O'Malley called, deliberately heightened scrutiny. This appeal presents the opportunity for the Supreme Court to affirm over 50 years of jurisprudence in this state that has afforded private property owners such heightened judicial scrutiny. The easiest way to think about this is simply that the LaSalle factors announced by the Supreme Court in 1957 and followed ever since then represent such deliberately heightened scrutiny. When private property rights are diminished, when property value is lost because a municipality acts, our courts are not unfettered in reviewing such actions to determine their constitutionality. The as-applied challenges that this Court usually sees, which represent a vast majority of cases, invoke deliberately heightened scrutiny. And Justice O'Malley recognizes that as something of an exception to the otherwise rational basis test, which really looks for any conceivable reason for municipalities to justify a municipality's actions. The Second District opinion errs not in assigning deliberately heightened scrutiny to zoning cases or as-applied cases, but by failing to follow its own logic. And when it says deliberately heightened scrutiny applies in as-applied cases, not providing such deliberately heightened scrutiny in facial challenges. Because as Justice O'Malley stated, as Hinsdale agrees, and as our case law makes clear, it is the nature of the right to be protected that determines the level of scrutiny in any constitutional challenge. And the nature of the right is the same in an as-applied case and in a facial case. So the deliberately heightened scrutiny, as represented by LaSalle, clearly applies in an as-applied. Where the Second District erred is in not applying that same deliberately heightened scrutiny to a facial challenge. The test does not need to be the same. The level of scrutiny does. Would you agree, Mr. Ramsell, that the rational basis test appears to be the standard that the federal courts apply uniformly in this context? In zoning, yes. Facial challenges? Facial and as-applied. And what about in the context, facial challenge to the constitutionality of state flood control legislation? We've applied rational basis in that context. Yes, that was another non-zoning case. So we have here a presumably valid exercise of state power that doesn't implicate fundamental rights. Doesn't the standard have to be rational basis? Well, the standard can be called rational basis. But the test itself, the level of scrutiny, should not be a minimum rationality. You see, the state flood control legislation does affect land use. But the property owner, the person who purchased that land in Flossmoor, didn't purchase, as part of the bundle of rights that they bought, the right to build more homes than the flood control legislation already that prohibited it. So that person didn't buy as part of the bundle of rights and therefore inherit the right to purchase the right to rely on that. Did not buy the right to build the two homes in Beverly Bank he wanted to. When you purchase a piece of property, the zoning represents a governmental promise not to interfere with those zoning rights, except unless the public welfare requires it. So we think about our Lockean heritage, and that's what Judge Easterbrook talks about in the River Park case. We look at the Lockean heritage and say that zoning is a restriction on the otherwise free use of property. It's a governmental promise not to interfere. So when the government does interfere, when it does, deliberately heightened scrutiny should apply. In the floodplain case, Beverly Bank. I have to stop you here because my understanding is that we're here to decide whether the rational basis or the substantial relationship test applies. Correct. And in our case law, rational basis is a lower level of scrutiny than what I'll call the intermediate scrutiny under substantial relationship. Right. So when you say rational basis can't apply, you're asking for a different type of rational basis? Rationality does not exist in a vacuum. We know some things can be rational in some circumstances that aren't rational in another. And so what we propose, what we submit to you and what we put in our briefs is that to be rational, and I'm going to address the substantial test in just a second. To be rational, to be rational, there must be in a zoning case when private property rights are taken. To be rational, there must be a substantial relation between the zoning ordinance at issue and the public welfare. In that paradigm, in that phraseology, we can bring, we can call it rational, we can call it a rational basis test or rational basis plus. But the key is not the label. The key is the level of scrutiny. And this court has applied deliberately heightened scrutiny in zoning cases since at least 1957, and there's no good reason to interrupt 50 years plus of solid, uniform zoning jurisprudence. This difference between spatial and as applied is something of a red herring. It's the nature of the right to be protected that determines the level of scrutiny. So if we want to call it rational basis, let's just understand that rationality, when you're taking private property that you have a right to rely on, when I say taking, I mean diminishing, not a takings case. Rationality means that there's got to be a substantial connection. The nexus has to be higher. It's a different rationality than what might control the placement of stop signs or parking, you know, no parking signs, mobile food licenses. All sorts of things that are subject to this traditional minimum rationality. We know, for example, that it is never rational or almost never rational to discriminate on the basis of race. We know that it is almost never rational to impair somebody's freedom of speech. And so we call it strict scrutiny in order to subject such legislation to a higher level. But it's all in a continuum of rationality. And that's where the labels get confusing in our state. And they have been confusing. And that's what the brief attempts to address. Now this court is free because it can afford greater protection under the due process clause than the federal constitution to provide more protection. This court is free to announce, as it clarifies this question, that zoning cases, because of the reliance, and that's the key, you purchase this bundle of rights, something you are entitled to rely upon, a governmental promise not to interfere. It's taken. It's free to say, let's call it middle tier. Let's just put it there because we can afford greater protection in our state than the federal. The federal constitution represents a floor. So there's two ways to look at this. And the key is not to disrupt 50 years of zoning jurisprudence. We can call it rational basis, or rational basis plus, but state that to be rational, there must be a substantial relation to the public welfare and maintain the LaSalle factors for as-applied cases. So then the issue is, what's the right test? Not the right level of scrutiny. We know what it is. Deliberately heightened. The question then becomes, what's the right test for facial challenges? And Ms. Napleton has proposed in her briefs a nine-part test, which is derived from LaSalle, from Sinclair, and other zoning cases, not flood cases, snow removal cases, zoning cases. And the nine parts that we think are germane to this, the eight parts, are the following. And I just want to make a brief comment. To be facially invalid means to be invalid in all applications. So we look to a situation where, from its genesis, a particular zoning ordinance or amendment is flawed. These factors attempt to get to that because if it's flawed in its genesis, it may never be constitutionally applied. So we look at the extent to which all property values are diminished by the zoning restriction, which is from LaSalle. The extent to which the destruction of property values promotes the health, safety, morals, or general welfare, which is from LaSalle. The relative gain to the public compared to the hardship on property owners subject to the ordinance, which is from LaSalle. Whether there exists a comprehensive zoning plan, and whether the zoning amendment was passed pursuant to that plan, which is from Sinclair. And this is critical because when zoning amendments, and this is the Supreme Court's own cases, the Harris Trust versus Dugan, when zoning amendments are not passed pursuant to a comprehensive plan, the presumption of validity is seriously weakened. It is that presumption of validity that creates the plaintiff's burden of clear and convincing evidence. So if there's no comprehensive plan and a municipality goes out and rezones something without a plan, our law says that presumption is diminished. And the Harris Trust put that in the context of it's diminished because the presumption of validity is diminished because of the effect, the change in the zoning rights that the property owners had come to rely upon. So there again, you get this concept of reliance interwoven with the cases and the rationale. So our nine-part test looks at a comprehensive plan, and we allege in this case that Hinsdale doesn't have one, and it wasn't passed pursuant to one. Whether the community needs the challenged ordinance, that's a variation on the Sinclair factor. The extent to which the ordinance creates nonconforming uses. And we cite the Cupsick case for the proposition that creating nonconforming uses is a problem. It's a burden on the property owner, and it's a burden on the municipality who has to administer the code and now deal with nonconforming uses. And then eight, whether the ordinance benefits the municipality as a whole. And that might sound a little repetitive, but this court stated in Trust Company of Chicago versus City of Chicago, the zoning amendments must be passed not in deference to the wishes of a few, but to benefit the city as a whole. And so we know from LaSalle, the courts just don't look for any conceivable basis. Don't employ minimum rationality. It's an eight-part or nine-part, depending on how you count them, weighing test. And it causes, although the plaintiff always maintains the burden of proof, it causes the municipality to put forth its justification and to have that justification tested. And it's tested because the plaintiff's property has been diminished by an action of the municipality. And the act that diminished those rights that decreased that property value was in derogation of that bundle of rights. It really gets to the very fundamental issue of property ownership, and that's why this case affects millions and millions and millions of people. Private property owners should not be subject to the whims of municipalities, to the whims of legislators, aldermen, et cetera, that want to put your property in a different zone overnight for any conceivable reason. As Judge Easterbrook said, the due process clause is made of sterner stuff. So I appreciate your question. Mr. Ramsdell, you just said about putting property in a different zone, and you used the phrase rezoning. I want to make sure I understand the context of your argument in this case. As I understand it from reading the briefs, it was a B3 district. Correct. And it's still a B3 district after the amendment. Right. So the zoning classification for that geography was and still is B3. Correct. So it's not a map amendment. It's not. There was a text amendment that created the rights associated with B3 by limiting maps. Now, one other question. As I understand it, you can still do everything in B3 that you used to do, except now, and this is where it's a little unclear, I guess temporarily, initially it was beauty salons and financial institutions, but now is it just financial institutions on the ground floor? Yes. Yeah, correct. Okay, but one other question. Before the change, it was a GM training facility. After the change in, presumably through today, it's still a GM. That's correct. So there's been no actual impact on the property owner in that context. In that context, it's a proposition that I disagree with, that there's been no impact, because a willing buyer or seller My question was in the context of pre-amendment use and current use. Pre-amendment use and current use are the same. Property value, however, has been damaged, and property value has been lowered. A willing buyer will pay less because the option of putting banks, a bank on a major street in a major thoroughfare, where the business classification, which is B3, is supposed to provide a full range of businesses, and where Hinsdale's own experts didn't recommend this, didn't suggest that there would be a lost opportunity for retail sales taxes in B3, so they go and do it anyway. Ms. Nableton would not be able to sell that property. It's our allegation. It must be assumed to be true. Cannot sell that property for as much as she could before, because whoever buys it has lost the ability to put a bank on it. There's your diminishment in property rights. When she bought the property, that was part of the bundle. She had that right. It's now gone. It's been taken. Removed. Taken is a confusing term, too, so let's stick with removed. And what is the constitutional standard this court is going to invoke? Now, if it was an as-applied challenge, I don't think we'd be here, because everybody knows the LaSalle factors. Everybody knows it's deliberately heightened scrutiny. But Justice O'Malley is right. It doesn't matter whether it's as-applied or facial. The level of scrutiny should be the same. What he did was say, except for LaSalle factors and as-applied, it's always rational. So then he assigns to this facial case a three-part Alamo test that doesn't look anything like the LaSalle test, doesn't provide the same level of scrutiny that he said needs to be provided because they should be the same, and doesn't give the plaintiff the opportunity to weigh, and the court the opportunity to weigh, whether or not, in fact, this actually benefits the public. I suggest to you as follows. Hinsdale says, we're doing this in order to save, in order to generate revenues from retail sales taxes. Now, Ms. Nableton has alleged, and that allegation needs to be considered to be true, that she's lost the right to put a bank there, the ability. It is no longer permitted. She's lost property value. Now, we don't know how this washes out at a trial, but we suggest to you that all of these properties along this heavily traveled corridor have been similarly damaged. Is it not possible that the decrease in property value therefore leads to a decrease in retail tax revenues that could outweigh whatever increase in retail sales taxes? So they say, we want to generate revenue, so we're going to eliminate banks, but they're not considering whether or not by depreciating property value they're going to lose real estate tax revenues. I don't know where the experts wash, but it's alleged in the complaint. It should be considered true. These things should be weighed. Just because Hinsdale says it's going to be good doesn't make it so. It's never been that way with zoning. Zoning has always been subject, since Euclid, to this concept of the substantial relationship test. And so, in summary here, there's two ways to look at this. Again, this court is free to simply state, we think zoning cases should go into intermediate tier, and use the exact substantial relationship language it's been using for over 50 years, and we're free to do that, and we think it should be in the intermediate tier, and that's what we're going to call it. This is the test. These are the levels of scrutiny. Or, if uncomfortable with that proposition, because the Supreme Court has only recognized two or three categories, call it the rational basis. But find that to be rational, when you take somebody's property rights, when you remove somebody's property rights, diminish their property rights, that they have a legally protected right to rely on. There must still be a substantial relation between that ordinance and the public welfare. So what this court needs to do is resolve the lexicon problem. As I put in my notes, I put the confusion lies in the name assigned to the level of scrutiny and the proper test, not the level of scrutiny itself. There's no reason to undo LaSalle. LaSalle is the law in Illinois, has been. Hundreds of reported decisions. If this court adopts rational basis and reduces all zoning cases to the test that says any conceivable reason, minimum rationality, it's going to do away with the concept of reliance, and property rights, zoning as a right, is gone. We might as well not have done this for almost 100 years, since 1927. Because for any conceivable reason, you have no real right to rely. You bought a bundle of rights, the municipality can change it for whatever reason, and there's going to be very little deference given. And that affects every private property owner in the state of Illinois. So what we're asking this court to do is affirm LaSalle, clarify the lexicon problem, which we've discussed today, and adopt a set of factors that reflects the appropriate test for deliberately heightened scrutiny. And when that's done, take a look at Ms. Ableton's complaint. It easily satisfies Illinois' pleading requirements. And we've cited to you four or five cases brought up on motions to dismiss in a zoning context that view the complaint through the lens of LaSalle and just say, you know, it's really difficult to plead these meaningfully right now. Most of the time, LaSalle is best reserved for trial. It's difficult to meaningfully review them. But if you otherwise state a claim of arbitrariness and irrationality, your complaint's good to go. And we suggest to you that when Hinsdale says in B3, full range of businesses, and Ms. Ableton's property is located in B3 on a major thoroughfare, and then eliminates the opportunity to put a bank there, when their experts don't even support that, when their plan commission unanimously voted against the moratorium that gave rise to it, when she and all her property values are diminished, when real estate taxes will be lost, that there's a weighing that needs to go on here. Her complaint satisfies LaSalle. So, again, the court needs to clarify that. Thank you, Mr. Ramsey. Thank you. Am I done? May it please the court. Good morning. My name is Ken Florey. I'm the attorney for the village of Hinsdale, the Eppley, in this case. You've just heard from Ms. Ableton's attorney that, effectively, he is asking this court to eliminate the rational basis test in jurisprudence land use analysis. Before that drastic step, which would be against the well-established precedent of this court, is taken, you must consider the facts of this case. Plaintiff's property is currently under a 50-year lease, has been discussed, and she admits that there are no current plans to redevelop the property, to change its use. She has no plans before the village to construct a bank on the first floor. She has no plans to have a first-floor bank change with any drive-through lanes,  Critically, she has never applied for a zoning change, a text amendment, a plan development application, which could include a bank, or a variance, which is another tool to obtain relief from strict compliance with a zoning code. Instead, she's filed a suit based on imagined potential theoretical plans of a potential development that would be inconsistent with a village's decision when the village has not had that opportunity to review such a request. This is the nature of official challenges. The ordinance at issue restricts banks from the first floor, and under the rationale that the banks on first-floor space take up prime retail space, and the retail space generates sales tax. The sales tax funds public services, police, fire, roads, sewers. The village, by adopting the amendments, contrary to council's representations, based on a detailed analysis, based on expert opinions, based on consensus and approval from the plan commission, and public hearings approve the amendments. This case does involve official challenges, has been discussed, in that plaintiffs seek to invalidate the ordinance in its entirety, as it applies to dozens and dozens and dozens of parcels within these two zoning districts at issue. How does the fact that the village action was inconsistent, apparently, with what the plan commission recommended with regard to B3 and the elimination of storefront or first-floor level credit institutions? That was not recommended by the plan commission. Is that correct? That is not correct. I think you've been misguided in the statement of facts by council. The plan commission simply disapproved the moratorium that the village instituted before it took the final steps. The village instituted a moratorium to see what the effect of freezing approvals of building permits for banks and beauty salons. Then it went through the analysis. The plan commission did, in fact, approve the tax amendment that is at issue today. It was approved and subsequently, obviously, approved by the village board. That is critical. It had support from the plan commission through the public hearings, through the experts. Please don't be misguided by that misstatement. Council, are there other banks existing, preexisting in the B3 district? Absolutely. There are banks on first floors. Part of this ordinance does many things. One of the things it does, it also regulates drive-through lanes, locations, number of drive-through lanes for existing banks. And remember, that's critical because under a facial case, this ordinance must be void under any circumstance, under any piece of the legislation. If it's a valid exercise of our police powers to regulate the location of the drive-through lanes, whether they go into traffic or not, whether there's appropriate stacking, the number of those, then you must approve this ordinance. You must deny the facial challenge. Council likes to focus on the first floor banks issue, which is also obviously a part of this, but you must consider the ordinance in its entirety under any circumstance as applied to any parcel of the dozens and dozens and dozens of parcels in these two zoning districts. Is there any type of heightened scrutiny in this case because it involves property rights? This court heard the same argument in Stokovitch, Village of Lake Villa v. Stokovitch, where the plaintiffs in that case rang the bell of we are fighting for property rights, the right to use our property in any manner that we see fit, and that is a fundamental right was the argument by the plaintiffs in that case. This court specifically rejected that, rejected the notion that simply because you're talking about what you want to do with your real property does not elevate it to a higher scrutiny level in a zoning challenge, particularly in a facial challenge. So, no, this court's precedent through Thompson, through Beverly Bank, through Stokovitch, clearly states that the standard is a rational basis, not a heightened scrutiny. Council has alluded to, I think, two, possibly three levels of scrutiny. I'm not sure, but we need to clarify that. The first tier of scrutiny when facing a substantive due process analysis is for strict scrutiny. These are laws affecting a fundamental right or suspect class. The courts will look to a compelling governmental interest to determine if it was nearly drawn. Our case clearly does not fit in that category. Stokovitch tried to fit our case into that category but was denied appropriately. The second tier, the intermediate scrutiny, which appears from argument, seems to be the direction that Napleton would like this case to head into. This intermediate scrutiny under federal law in this court's law is reserved for laws affecting gender, illegitimacy, or incidental burdens on free speech, none of which exist in this case by any remote chance or allegation. The second tier uses the terminology, must be substantially related to an important governmental interest. And then we have our third tier that applies to all other laws and regulations, the rational or reasonable basis test that examines whether there's a legitimate government interest and whether the tools and methods chosen by the municipality or the legislature is reasonably related to those goals. The terminology does differ in opinions. We do agree on that point. There are different phrases that are used all the way back to Euclid, which is the heart, the seminal rational basis test uses substantial basis language. So that has created some of the confusion. But the common denominator in all of these cases is the concept of arbitrary and capricious. For rational basis review, for this third level of review, it will only be overturned if it is arbitrary or capricious, none of which is present in this case. Clearly, the detailed analysis that the village underwent before adopting this ordinance, the public hearings, the expert analysis, the moratorium to test whether this concept would, in fact, prove out to be true, are all anything but arbitrary and capricious actions by a governmental body. Mr. Flory, you heard Mr. Ramsdell say that the as applied versus facial is a red hearing. Do you want to address that as to why the fact this is a facial challenge, even in a zoning case, that the lower level of scrutiny should be applied? I strongly disagree that this is a red hearing. This court's analysis starts with the nature of the right. Does the right fall within the strict scrutiny category? Does it fall within the intermediate scrutiny category? It doesn't. The next line of analysis, it's now in the rational basis third category. Is it a challenge, a facial challenge, to the ordinance in its entirety, or is it an as applied challenge? We're talking about a global challenge of the ordinance overall, as applied in any circumstances to any parcels, versus an as applied. That distinction, the facial versus as applied, is critical to which levels of evidence, which specific pieces of evidence are going to be required that relates to the LaSalle factors. This court has consistently applied the LaSalle factors analysis to as applied cases. The two cases that the court used LaSalle factors to initially a facial challenge are single property cases, both of which Cosmopolitan in the cases relied on counsel, and Dugan in this case, were initially facial challenge cases that were converted to as applied because it was an ordinance applying to one single parcel of property. So when you do have the as applied cases, that distinction is critical. It must be one of the first questions, after you've gone through the tier of analysis to figure out which tier you belong in, then you must look at whether it's facial or whether it's as applied, because it's night and day as far as the approach, the evidence that must be presented and proven to overcome the burden of the constitutionality of the statute. And what's the philosophy or rationale behind that? It goes to specific plans. The rationale behind, if you are attacking an ordinance, from the global perspective, isn't a facial case. The damages are speculative. The effect is we're guessing, as you've heard. Since there are no plans to develop a bank on Ms. Stapleton's property, it is pure speculation that there's been somehow the property value has changed or that a bank will never be allowed there. Because under an as applied case, the theory is now you have gone through a specific process. We're going from the broad to the narrow. We now are looking at a specific request with real requests, with a real application that's been denied by the municipality. You've gone through the process. You've tried to use the other tools, the variances, a plan development, special use permit, other zoning text amendment to allow your project to proceed. You've gone through that process. You've been denied. Now we're going to look at your individual case on a factual, very fact intensive level. We're going to compare the properties around it. We're going to compare the values of the properties around it. We're going to balance the overall good of the ordinance to the village as a whole versus the harm to this individual property. Only when you have all these facts present can you conduct such an analysis that leads you through the LaSalle factors. The LaSalle factors, as you know, were developed or evolved over the 50-year period. The LaSalle case clearly put them in one neat package for this court and other litigants to follow. But that's all it is. It's an organized analysis of the evidence to demonstrate that an as applied case presents a constitutional challenge. The second district relied on three key cases. Thompson, in which case the plaintiff sought the right to play night baseball at Ridley Field. Beverly Bank, where the plaintiff sought the right to build homes in a floodplain, 100-year floodplain. As well as Stokovich, the most recent case in 2004 of this court, where the plaintiff was seeking the right to leave a dangerous house, remain standing. This court, those were facial challenge cases. This court applied a rational basis in all three of those cases, and they are compelling precedent, controlling precedent that applied to this case at the second district and should also be followed before this court. Napleton, like those plaintiffs in those three cases, sought to protect the right to do with her property what she pleased. She can't be more specific because there are no current plans to develop the property. She argues that asserting the right to do use your property as you choose brings special treatment, that this, again, should be a special case. There is no greater right than using your property as you please. The court looked at this in Stokovich and expressly rejected that argument. Let's be clear. The village of Hinsdale does not trample on property owners' rights. The village intensely respects the property rights of individuals. It's a legislative body, however, that is elected by the village as a whole, and it must balance the rights of those individuals with the general welfare and the needs and demands of the village as a whole. Thompson, Beverly Banks, Stokovich, all of those plaintiffs who have asserted to use their property in a specific manner in this court stated under those circumstances and that type of a challenge, a facial challenge, the rational basis test is an appropriate test, and the use of the LaSalle factors is entirely inappropriate. Plaintiffs' reliance on Cosmopolitan and Dugan for the higher scrutiny simply is misplaced, and to utilize the LaSalle factors in this case, again, is misplaced, and it would be a dangerous precedent to eliminate the rational basis test and install and insert and inject the LaSalle factors into every zoning land use case that comes before the trial courts. The LaSalle factors themselves do not logically, legally, practically lend themselves to a facial challenge. Again, the facial challenge where you're looking at the case from any perspective, from the dozens of parcels involved, from the multiple aspects of the ordinance, it is impossible to go through the LaSalle factor analysis for every parcel that's subject to this ordinance, for every aspect of the ordinance, whether it's a first floor bank or a drive-through facility, and search for the one, if there is one example in this detailed analysis that is valid, then the entire ordinance is valid. Again, the facial cases are the global, the macro view of the legislation versus the as-applied cases, which focus on a much more fact-intensive micro view, specific review of how that property actually is going to be used and the actual impact of the ordinance on that property, not the perceived, not the imagined, not the theoretical impact. This court has repeatedly held that there is a presumption of validity to constitutionality of a legislation, which this plaintiff and all other plaintiffs must overcome. Napleton has not even come close to satisfying her burden in overcoming this presumption. Simply stated, she has not sufficiently pled allegations in her complaint, a few facts that there are in the complaint, to demonstrate that the ordinance is void under any circumstances as applied to any property, which is key, which is required to succeed in a facial challenge. Of a zoning ordinance statute or other law. Mr. Flory, I can't recall, is the dismissal in this case with prejudice, without prejudice? The procedural history is a little unique. Napleton originally filed two counts. One is a facial count and one is an as-applied count. A motion to dismiss the as-applied count was presented in that Napleton withdrew the as-applied claim, admitting it's not right. This is not an as-applied case. We then proceeded with a motion to dismiss the remaining count, the facial count. It was granted, the court granted right to re-leave, I'm sorry, re-plead, which Napleton declined. So Napleton could have come back and added more facts to attempt to make the case stronger, but she declined to do so, presumably because the facts weren't there. Again, in a facial case, you're making up the facts as you go to try to knock out the ordinance. So it is with prejudice because that was the only manner to send it up the ladder for review by the appellate court and ultimately this court. For the sake of argument on this rational basis test, are we, it seems that a large part of the briefs is just, is it this test or is it another test, as opposed to, is it justified under the rational basis test? Am I reading the briefs correctly? The lion's share of both briefs do go into that analysis because once you, and our brief also goes into the application of the rational basis test to our ordinance. And to be frank with you, once you get to that point, once you realize it is a rational basis test and you don't import the LaSalle factors into a facial case, then you simply have to identify the right at issue, which in this case is preserving the revenue of the village through generating sales tax versus non-sales tax, producing businesses, balancing the businesses that generate a sales tax versus not generating a sales tax. That that is a legitimate government interest. Revenue controls what happens, the services we can provide our citizens through police, fire, roads, sewer repairs, parks. Right. Well, is there anything in the record on this rational basis that indicates a bank either conflicts with the generation of sales tax, even though they may not generate sales tax alone, but does it facilitate sales tax? The record indicates that the expert report by Gruen reviewed the issue. Do banks represent a loss in sales tax? And, yes, there is evidence in this report that it's a lost opportunity, that the sales tax is lost by a non-producing entity or service business such as this, and it's not regained by attracting other businesses that may generate sales tax to offset that loss. Just on Justice Kilbride's kind of sorting out where we are here with the briefs, the appellate court disagreed, you disagreed with the appellate court on the standard of review that they used and agree with the result and, therefore, basically asking us to affirm on a different basis, that if we apply rational basis, we would come out with the same result and quickly get to that point. Is that? No, I don't think that's correct. The second district did apply a rational basis to us, no doubt. It's very clear. I know it's confusing that you were misguided. Well, because counsel who didn't prevail in the appellate court, the appellant here is arguing that Justice O'Malley was right, and I did go through the PLA and looked at the order, and I think I didn't have time to review it as carefully as I would like at this moment, but he does talk about how, I don't think he uses red herring, but talks about how it doesn't matter if it's facial or as applied. He's saying it doesn't matter if it's facial or as applied when selecting which of the three chairs you're on. He clearly says that whether it's a facial case or an as applied case, it's still a rational basis test. He states that the use of the terminology substantial basis or substantial reason is littered throughout all the decisions. We had decisions that used both terminology in the same sentence. So he states that there are. Regardless, he used the lower level of scrutiny. He used the lower level. He followed the federal courts. We completely agree with that. We wholeheartedly agree with that. And he also then said you cannot apply the LaSalle factors to a facial case. So he agreed with the lower court and agreed with us that rational basis, that's the language he does use, is the appropriate level, and he soundly rejected the use of the LaSalle factors for the practical reasons for there's utterly no basis in jurisprudence out there to apply. Well, thank you, Mr. Floyer. Your time is up, and maybe Mr. Ramsdell can tell us why he enjoyed the opinion. I enjoyed the opinion of Justice O'Malley so much. I enjoyed the opinion of Justice O'Malley because he was right that it's the level, it's the nature of the right protected that determines the level of scrutiny. And he says apart from LaSalle and as applied, it's rational basis. And that's on page 16 of the order. But it's that apart from the application of LaSalle, and he says that's deliberately heightened scrutiny. So there he is recognizing that apart from the deliberately heightened scrutiny of LaSalle, it's rational basis. And there's the disconnect, Justice Thomas, because if it's deliberately heightened for as applied, which used LaSalle, it's got to be deliberately heightened for facials. And the question to the court here is what's the right test? And what if we call this? So you depart there from the opinion. Because I think it was inconsistent. I mean, he said we have deliberately heightened scrutiny and LaSalle for as applied. So, therefore, in the nature of the right determines the level of protection. So then he says this is a facial, but then does the Alamo test, which is not LaSalle. It doesn't provide deliberately heightened scrutiny. Deliberately heightened scrutiny of LaSalle, and that's why it's more than an evidentiary method, the deliberately heightened scrutiny of LaSalle is the requirement that at a trial, now you'll have to plead to get there, but at a trial, the village has to put forth its justification. And there is going to be a weighing here. We are going to weigh this. We're not just going to look for any conceivable reason to change the zoning of your land and let it fly, and that gets back to reliance. If I might take a second just to address some of these cases. Number one, the Illinois Supreme Court has never used the minimum rationality, that is, this any conceivable basis. Stokovich has never used that in a zoning case ever, ever, ever. Stokovich was a demolition case. The woman let her house fall into such disrepair that it became dangerous, and it was a public nuisance. And Lake Villa demolished it. Justice Garland's opinion adopted rational basis because it found that property ownership is not a fundamental right and therefore rejected strict scrutiny. We are not arguing for strict scrutiny. We're not arguing that property rights are a fundamental right entitled to that level. But Stokovich has nothing to do with zoning. This woman didn't lose anything, a right to rely on letting her house fall into disrepair. She didn't lose some part of the bundle of rights. She didn't lose any zoning rights. She could build a house back. She lost the structure, but she lost it because of her own actions. Beverly Bank used both tests. Not a zoning case, flood control. The person who wanted to build the homes had no right, when he purchased that land, to think that he'd be able to build them. They were in a floodplain. So when he goes to Flossmoor and the Department of Transportation and seeks permits, they said no. Well, Transportation said yes and then revoked them. But he didn't lose a right that he was entitled to rely on. This lexicon question is critical. This court can find that zoning cases fall into the rational basis, but to be rational, there must be a substantial relation to the public welfare. There must be something more than any conceivable basis. There are three zoning cases in Illinois that are facial. How do you address Mr. Flory? You heard me ask him to go through why as-applied challenges with their specific facts should be at a heightened level versus a facial challenge that, like in this case, I mean there isn't a bank that's coming in to the first floor of Ms. Napleton's property. So we don't have those factors. Why shouldn't it be heightened in the as-applied case when those facts are there and not in the lower standard when we don't have the facts? Well, I disagree with Mr. Flory's characterization of our complaint as having imagined harms and sort of drawing generally and guessing at things. First of all, it's irrelevant. The facts are alleged properly. They need to be assumed to be true. This is a motion to dismiss. But more importantly, when you look at an as-applied case and you look at, for example, the self-factors 3, 2, and 3, the property value loss, that's alleged in the complaint to be lost. It's not proven. So I think the difference is that this is what protects against a flood of litigation, one of the issues that was raised by the amici. The difference is that the facial cases are going to be tough to win, but it doesn't mean that the level of judicial scrutiny should be any lower. It's going to be a tough case because you have to prove it invalid in all applications. But if you can do that because at its foundation it's wrong, it's invalid because it was passed in deference to the wishes of a few, it doesn't actually do what it says, promote the public welfare the way it says it will, then it's possible to prevail. And we've got three cases in this state that have done facial challenges and used heightened scrutiny, and they are Harris Trust v. Dubin, this court's decision, 1983, Cosmopolitan Bank v. Citi, and Hanna v. Citi. Nobody's talked about Hanna today. But the Hanna court dealt with the Beverly Bank issue and looked at it and said, it's not a zoning case. Now, Beverly Bank used the substantial relationship test and the rational basis test and simply found that it passed constitutional muster under either one. But here's what's critical about Beverly and why it's not precedent for zoning cases. If Beverly was a zoning case, it would have used the LaSalle factors because it was both as applied and facial. It didn't. This court was simply not treating Beverly Bank as a zoning case. There is no zoning precedent in this court for this extremely deferential scrutiny in either as applied cases or facial challenges. This court should not follow federal precedent. We cited in our reply brief from Judge Easterbrook that no zoning plaintiff has ever been successful in the Seventh Circuit. They think of zoning as a local matter and properly reserved to the state courts under the Williamson abstention. So federal courts just don't provide that level of protection, but our courts are free to provide more, and they do, to LaSalle. Ms. Nableton's property, I want to make a couple of comments on this. When she does not have a plan, but she has lost, as property alleged, she has lost the right to put a bank in. And I disagree with Mr. Flory that, well, we didn't apply for a special use. The text of the amendment says no special use permits for banks, so it would have been futile. Put yourselves in her shoes. You're a private property owner. Municipality seeks to change your zoning and reduce your zoning rights. But you don't have a plan, okay? If you can't file a facial challenge, you have nothing to do, there's nothing you can do but sit there and wait and have your property diminished. And at some point down the road, sure, maybe you'll plan to develop, maybe you won't. It's your nest egg. And Ms. Nableton is in that situation. We called her a passive plaintiff. This is somebody who did not seek something in derogation of the zoning. She did not pick a fight with the village of Hinsdale. Mr. Hanna did not seek anything in derogation of Chicago zoning. Mr. Hanna didn't pick a fight with the city of Chicago. Both of them lost property rights. And the only way to attack that, to redress those constitutional or alleged constitutional violations, is to file a facial challenge. There is no other way. Because as applied, you've got to exhaust. And if you don't have a proposed plan, you can't exhaust your remedies. And that's why Harris Trust and Cosmopolitan are facial challenges. Even though they only involved one piece of property, number one, they state in the text of the opinions that it was a suit to invalidate in their entirety the ordinance, and number two, they didn't require exhaustion. To require exhaustion means it's as applied. They didn't require exhaustion. They stated they wanted to invalidate the ordinance in their entirety, and they treated them as facial. Hanna involved a bigger area, multiple parcels, and the first district, obviously in the published opinion, explained that the LaSalle factors should apply. And the amici are simply wrong that that's impossible and that it's never been followed. I can't cite as legal precedent the other Hanna case that's attached to the reply, because of Rule 23, but the court can take judicial notice of the fact that Hanna's been followed, and that in a facial case involving nine blocks in Lincoln Park, the court went through the LaSalle factors and ruled for Hanna and affirmed. And this court denied petition. This court denied petition on both Hanna cases. Both facial, both heightened scrutiny, substantial relationship, both victories, both of them denied petition in this court. I've only got a few minutes here. So we're going to ask this court to not rely on nonzoning cases. There's a difference between zoning and nonzoning, because zoning takes away a bundle of rights. It takes away something that this court has said you have a legal right to rely on. Downzoning decreases value. And I want to suggest to ask for the procedural questions that were raised. We stood on the complaint because Judge Popejoy adopted what we think is the wrong test. We went out armed with Hanna. The Hanna decision appeared to be, you know, there was no second district authority at that time. Judge Popejoy simply refused to follow it. And rather than try to replead under this minimum rationality test using nonzoning cases, we stood on our complaint to get the proper test invoked. And we've asked that if, and that should not be held against Ms. Napleton. Conserves time, judicial resources, client resources. But if this court determines that the test, in fact, is this deliberately heightened, we'd ask, but that the complaint fails, we'd ask that it be remanded to the trial court with the opportunity for leave for Ms. Napleton to plead under the test that we hope this court creates arising out of this case. We thank you for your time. Thank you, Mr. Ramsdell. Thank you, Mr. Flory. Case number 105-096, Kanthren R. Napleton, etc., versus the Village of Hinsdale is taken under advisement as agenda number 21.